# Turnley *et al. v.* Hanna.

67  101
122  404

*Bill in Equity to enjoin action of Forcible Entry and Unlawful Detainer, and to remove Cloud from Title.*

1. *Possession of land acquired by force; equity will not protect.*—When possession of land is acquired by such force as to entitle the party evicted to maintain an action of forcible entry and unlawful detainer, equity will not entertain a bill founded on such possession, to enjoin the action, and to remove a cloud from complainant's title to the land.

APPEAL from DeKalb Chancery Court.

Heard before Hon. H. C. SPEAKE.

This bill was filed, Nov. 4, 1873, by A. B. Hanna, against Mathew J. Turnley and others, praying for an injunction to restrain an action of forcible entry and unlawful detainer, and other actions brought by Turnley and others, to recover possession of certain lands, described in the bill, from Hanna and to remove a cloud on complainant's title to the land. The Chancellor granted a perpetual injunction against Turnley *et al.,* restraining them from prosecuting the action of

forcible entry and unlawful detainer, and other actions then pending, and ordered the cloud removed from the title. The opinion states the facts so far as they are necessary to properly understand the decision. The rendition of the decree as stated above, is assigned as error.

M. J. TURNLEY, W. H. FORNEY, COOPER & REEVES, and WATTS & SONS, for appellants.—The only possession which Hanna had of the land in controversy, when he filed this bill, he had acquired by force. Possession thus acquired did not authorize him to maintain a bill to remove a cloud from his title, for the possession which gives equity jurisdiction in such cases, must have been acquired in a lawful way.—*Hardin v. Jones*, 86 Ill. 313; *Comstock v. Henberry*, 66 Ill. 212. To permit one to avail himself of such possession, would be enabling him to make his own force and unlawful acts a *basis* for equitable relief. But it is well settled that a claimant of lands, who is not in actual possession, however good may be his right, can not file a bill to set aside adverse deeds alleged to constitute a cloud on his title.—*Daniel v. Stewart*, 55 Ala. 278. Nor will equity undertake to establish legal rights when there is an adequate remedy at law.—*Youngblood v. Youngblood*, 54 Ala. 486.

RICE & WILEY, for appellees.—The only plausible ground urged by counsel for Turnley for reversal is, in substance, that appellee, the true owner, *last* obtained possession by artifice. Even if the true owner did last obtain possession by artifice, or even by force, he might be indicted for such force, but would be entitled to all the protection for his possession to which he would have been entitled, if he had regained possession in a manner free from criticism. The Chancery Court has no criminal jurisdiction, and when it is appealed to by the true owner of real estate, in possession, for the protection of his· possession against such disturbers as were the original defendants, it will give him that protection, and will not *confiscate* his undeniable right of recaption and re-entry, nor hold that the exercise of his right of recaption or re-entry, has annihilated his right to invoke for his possession (although acquired *last* by artifice or force), the protection which courts of equity extend as against such disturbers as were the original defendants.—3 Bouvier's Institutes, 20–24; *Mahone v. Reeves*, 11 Ala. 345.

STONE, J.—The title to the lands in controversy in this suit was originally in George E. Patton. Each litigant claims from him, as the original source of his claim of title. He

was in possession in 1849, and continued to reside on the lands for near ten years afterwards. Whether he occupied as tenant of Brown, Hanna's vendor, or with his permission, is not very clearly proved—but the tendency of the testimony is, that he remained there with the permission of Brown, who was his son-in-law. In 1859 Patton sold and conveyed an undivided half interest in the lands to Turnley and Higgins. For Hanna it is contended that the lands, in 1849, were sold by the sheriff under judgments and executions against Patton, and conveyed by the sheriff to White, the purchaser; that White purchased for Brown, paying the purchase-money, and agreed to convey to Brown, on the latter repaying to him the money so paid; that Brown moved upon the lands when the purchase was made, and afterwards paid White the purchase-money; that White refused to convey, and Brown filed a bill against him to compel specific performance, which was decreed to him in 1854. Brown afterwards – about 1869 or 1870—sold and conveyed the lands to Hanna. For Turnley and his co-appellants it is contended, that after the sheriff's sale, and within two years, Patton redeemed the lands from White, paying the purchase-money, the interest, and all lawful charges; that he remained in possession in his own right until 1859; that he then sold and conveyed an undivided half interest in the land to Turnley and Higgins; that soon afterwards he left the lands, and removed to the State of Tennessee, where he died about the year 1861; that Mrs. Patton returned to Alabama about 1862, and re-occupied her former residence on the lands in controversy; that there was administration on the estate of Patton, granted in DeKalb county, and at the instance of such administrator, dower was allotted to Mrs. Patton in said lands, including her homestead; that she remained in possession of said dower interest until late in the year 1869, or January 1870, when she sold and conveyed her dower interest to Hanna, moved off the premises, and died in 1871. That the administrator obtained an order to sell the undivided half interest in said lands, and did sell said interest, as the property of the estate of said George E. Patton, and Collins became the purchaser, and received a conveyance.

As to the possession. The proof, as we have said, reasonably satisfies us that Brown was in the actual possession and occupancy of the land for some five or more years, when he removed to the State of Tennessee about 1856, where he has since continuously resided. The proof also tends to show that for some time after he left he had a tenant on said lands, occupying in his right. We infer from certain circumstances

this tenant-occupancy continued until 1860 or 1861. From that time we hear of no possession had or asserted by Brown, or any one in his right, until late in November, 1869. The testimony offered for appellants—defendants below—shows that they claimed control of the lands, exercising some acts of ownership, from and after 1862, until about December 24th, 1869 ; the administrator of Patton, after he was appointed, uniting with Turnley in this asserted ownership and control. Turnley rented out the lands, and had tenants upon them, from 1866 on, for some years. In the summer of 1869, a cabin was built on the lands, under Turnley's permission, and occupied, in part, by members of Turnley's family for two months. In November, 1869, Turnley had other cabins built and occupied by tenants. At this time no one was in the actual occupancy of the lands, except Mrs. Patton, the dowress, and said tenants of Turnley. The cabins were small, and very inferior. Brown, at this stage of the controversy, appeared on the premises, with others, his employees—and sometimes with Hanna—and Brown and his assistants demolished one or more of the houses, removed the timbers, burned some, and hauled Turnley's furniture, of little value, to a neighboring house, and left it there. They broke into one house that was locked, and continued to occupy it. On the 24th December, 1869, Brown and one Holton, together with others, by force, threats and intimidation, caused all of Turnley's tenants to leave the premises, and occupied them themselves. Hanna was present, and soon after took possession under his purchase from Brown. In January, 1870, Mrs. Patton left the premises and State, having sold her dower interest to Hanna. She died in 1871. The testimony of Turnley and his witnesses, if not disproved or disbelieved, is sufficient to establish possession in him and Collins, and such forcible eviction and holding, as to maintain an action of forcible entry and detainer. It is a dangerous practice, severely condemned by the law, to adjust private disputes by the strong arm of force.—*Davidson v. Phillips,* 9 Yerg. 93 ; *Childress v. Black, Id.* 317 ; *Turner v. Liembrick,* Meigs, 7.

Soon after this, Turnley and Collins commenced an action of forcible entry and detainer against Brown and Holton, for the forcible eviction, and recovered a judgment before a justice of the peace. Defendants took an appeal to the Circuit Court, and while the case was pending on appeal, Hanna filed this bill. He alleged he was in possession, had a good title ; and the object of his suit is to remove the cloud from his title, caused by the claims of Turnley, Higgins and Collins, to quiet his possession, and to enjoin the said action of forcible entry and detainer, and some other suits Turnley

was prosecuting growing out of their contention over the pos-session of said land.—*Hamilton v. Hendrix*, 1 Bibb, (Ky.) 67, was a case very like the one in hand. The court ruled that "a person holding the elder legal title, and in possession by force, and thereof convict, can not resort to a court of equity to try the right." The court, in commenting on the facts of that case said : "Considering the complainant as a *tort-feasor*, can it be said that equity should stretch for him a helping hand, yet further than if he had not been guilty, or had repaired the wrong ? Or, does it become a court of equity to encourage breaches of the peace, by acknowledging a pos-session so acquired as the foundation of jurisdiction, and protecting that possession to the end of a controversy upon conflicting claims ?" See, also, *Dedman v. Smith*, 2 A. K. Marsh, 260 ; a very strong case. In the case of *Comstock v. Henberry*, 66 Ill. 212, the principle is thus stated : "When the holder of an adverse claim of title to land took possession and leased the same for five years, and the complainant, also claiming title to the same land, procured the tenant to attorn to him, and the original lessor, by forcible detainer, recovered the possession, which was, on the following night, forcibly retaken by the tenants of the complainant, who filed his bill in equity to enjoin the prosecution of an action of forcible entry and detainer, and to quiet his title as against the holder of the adverse title : *Held*, that while the complainant was in the actual possession of the land at the time he exhibited his bill, yet, as it was obtained unlawfully and forcibly, he could not be allowed to take advantage of his own wrong, and would be considered in equity as out of possession, so far as the question of jurisdiction was concerned ; and being out of possession, he had a complete remedy at law, and a court of equity could not entertain his bill." In *Hardin v. Jones*, 86 Ill. 313, the court, in speaking of bills to remove a cloud from title, said : The " possession that gives jurisdiction in such cases must be such as was acquired in a lawful way, for it can not be that equity will lend its aid to protect a possession wrested from another by violence, or obtained by the use of any unfair or corrupt means. * * * His wrongful act can afford no foundation for equitable jurisdiction and relief." *Hamilton v. Adams*, 15 Ala. 596, is decisive of this case. In that case there had been a forcible eviction, and a suit and recovery in forcible entry, and detainer. The party who had thus tortiously acquired possession, filed his bill, setting up good title in himself, that the plaintiff in forcible entry and detainer was insolvent, and praying an injuncion, restraining the writ of restitution. This court said : " It is immaterial how perfect a man's title may be, if he enters upon the pos-.

[Thompson v. The State.]

session of another who has no title whatever, by violence, he cannot protect himself against the proceeding for a forcible entry and detainer."

Applying the principles stated above to this case, however, has no such possession as will give him a standing in a court of equity. Having entered by force, and thus violated the law, he has disabled himself from invoking the aid of the Chancellor to protect him in his possession.

The decree of the Chancellor is reversed, the injunction dissolved, and this court, proceeding to render the decree the Chancellor should have rendered, doth order and decree that the complainant's bill be dismissed, at his costs, and the costs of the appeal, both in the court below and in this court.

BRICKELL, C. J., not sitting.