# Norwood *et al. v.* Kirby's Adm'r.

*Bill in Equity to enjoin Judgments in Action of Unlawful Detainer.*

1. *Conclusiveness of judgment in action of unlawful detainer.*—A judgment for the plaintiff, in an action of unlawful detainer, is conclusive as to the existence of the relation of landlord and tenant between the parties, and as to the defendant's wrongful holding over; and these issues can not be again tried under color of a suit in chancery.

2. *Estoppel between landlord and tenant.*—If a tenant enters into possession under the lease, and afterwards acquires an outstanding title adverse to his landlord, he can not assert it against his landlord, without first surrendering the possession; and *a fortiori*, where the tenant enters under a lease from an administrator in his official capacity, he is estopped from setting up, as against the administrator *de bonis non*, a subsequent lease from the administrator personally under claim of personal title, or title in opposition to the estate.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 3d June, 1881, by Samuel C. Norwood, John Poe, B. L. McAnally, and Mrs. Lavinia Kirby, who was the widow of Joshua Kirby, deceased, against Jesse E. Brown, as the administrator *de bonis non* of the estate of said Joshua Kirby; and sought to enjoin two judgments, which the defendant had recovered against said Poe and McAnally respectively, in actions of unlawful detainer instituted by him in his representative capacity. The lands sued for, in each action, were parts of a tract containing about six hundred and forty acres, known as the "John McNary Reservation," of which Joshua Kirby was possessed at the time of his death in

1857, and of which he had been in continuous and uninterrupted possession for about thirty years, though he had no title. In the action against Poe, the lands sued for were described as "lots seven and eight;" and in the action against McAnally, as "lots one, two, seven, eight, and nine." The judgments were rendered on the 11th day of March, 1873, and the defendant in each case took an appeal to the next ensuing term of the Circuit Court, giving an appeal bond with Samuel C. Norwood as their surety; and in said Circuit Court, on the 4th March, 1880, a verdict and judgment was rendered in favor of the plaintiff in each case, for the land sued for, and $112 damages for its detention. Norwood was joined with Poe and McAnally, as a complainant in the bill, because he was a defendant in each of the judgments rendered in the Circuit Court; and Mrs. Lavinia Kirby was joined with them, because, as the bill alleged, "she was the lessor of said Poe and McAnally, and is liable and bound to save them harmless, in the event payment of said judgments should be enforced against them, and is liable to an action at the suit of the United States, in whom is vested the legal title to said lands, for the recovery of the rents thereof."

As grounds of equitable relief against these judgments, the bill stated these facts: That the said tract of land was set apart as a reservation to John McNary, under the treaties of 1817 and 1819 between the United States and the Cherokee Indians: That said Joshua Kirby acquired and held it under a lease from the heirs of said McNary, or under some other contract with them, or pretended so to hold: That the title or claim of said heirs was extinguished in 1853, several years before Kirby's death, by the payment of $6,400 to them by the United States: That the title to the lands being vested in the United States, they were considered and treated as public lands by the officers of the land-office at Washington, but, on the suggestion of adverse claims, were withheld from sale for several years, until the claims could be investigated and adjudicated: That the investigation was commenced "several years ago," by the proper authorities of the land-office, the administrator and heirs of Kirby being parties to the proceeding; but the testimony and papers were not forwarded to Washington until November, 1879, and the final decision of the commissioner, declaring the title to be vested in the United States, was not announced until November, 1880, after the rendition of said judgments in the Circuit Court: That letters of administration on Kirby's estate were granted, soon after his death, to Mrs. Lavinia Kirby and Silas P. Kirby, who jointly acted as administrators until the death of the latter in 1861; after which time, Mrs. Kirby alone continued to act as surviving administratrix until September

22d, 1877, when her letters were revoked, and letters of administration *de bonis non* were granted to Brown, the defendant in this suit: "That up to about the year 1870, said Lavinia Kirby, who was then the administratrix of said decedent's estate, continued to rent out the greater part of said lands, as such administratrix, from year to year, as the property of said estate; and so rented out said lands, as the property of said estate, because her intestate was at the time of his death, and for many years previous thereto had been, in the quiet possession thereof, cultivating and otherwise treating said land as his own; and your oratrix did not then know positively to whom said lands belonged. But, several years after the death of said intestate, and after your oratrix had been renting out said lands as the property of said estate, she was informed through various sources of a reliable character that said lands did not in fact at any time belong to said intestate, but that the title and right of possession in and to the same belonged to the United States, and she was also advised that the moneys arising from the rents of said lands were not assets of said intestate's estate; so that, and for said specified reasons, your oratrix, in or about the year 1870, ceased to rent out said lands as the property of said estate, but still continued in the quiet possession of said lots numbered from one to nine, parts of said tract of land, and continued from year to year, up to and including the year 1880, to rent out the same as her individual property; and at the time said actions of unlawful detainer were commenced, said Poe and McAnally were, and for several years prior thereto had been, the lessees of your oratrix for said lots of lands. At the time said actions of unlawful detainer were brought, and at the time of the trial thereof, said controversy as to the title to said land was still pending and undecided, and said Poe and McAnally were not allowed to raise any issue as to the title to said lands." On these facts, the complainants insisted that the judgments were rendered without any fault or negligence on the part of the defendants therein, and were inequitable; and prayed that they be perpetually enjoined.

The chancellor dismissed the bill, on motion and demurrer, for want of equity; and his decree is now assigned as error.

NORWOOD & NORWOOD, for appellants.

ROBINSON & BROWN, and WATTS & SONS, *contra*.

SOMERVILLE, J.—The bill in this case is fatally defective in several particulars, and was properly dismissed by the chancellor.

The appellants, Poe and McAnally, were clearly estopped

from denying the title of Brown, who sued for the possession of the lands in dispute in his trust capacity, as administrator of the estate of Joshua Kirby, deceased. They had entered upon these lands, originally, as the tenants of the estate, under a lease from Mrs. Lavinia Kirby, who, as the predecessor of Brown, was then acting as administratrix of her husband's estate, recognizing the lands as the property of the decedent, and dealing with them as such. In such cases, the title of the demised premises can not be put in dispute. The wrongful possession of the tenants holding over, and the privity of their relationship, were established by the actions of unlawful detainer, brought against them by the appellee. These issues could not be again tried, under the color of a chancery proceeding. *Hamilton v. Adams*, 15 Ala. 596. The law is settled, that where possession is obtained by a tenant, in recognition of 'the landlord's title, he is precluded from setting up an adverse title, with the view of defeating that of the landlord. If a tenant, after taking possession on the faith of his lease, acquires an outstanding title, adverse to his landlord, he will be required to first surrender possession, before he can be permitted to assert or claim under it.—Tyler on Eject. 550; *Jackson v. Harsen*, 17 Amer. Dec. 517; *Blake v. Howe*, 15 *Ib*. 681; *Russell v. Erwin's Adm'r*, 38 Ala. 44; 2 Brick. Dig. p. 200, §§ 103–4.

It is no answer to this view, that Mrs. Kirby asserted a personal claim to the lands, upon her alleged discovery that the title of the estate was defective, and continued to lease them to the same tenants as her private property. This she could not do, without a breach of her fiduciary duties, too clearly unwarrantable to be countenanced for a moment by a court of equity. If the tenants in possession are precluded from setting up, as against the estate, any adverse title acquired from a stranger, *a fortiori* would the rule apply to a title derived from one acting as administratrix, in a trust capacity, and herself attempting to create an adverse title by the assertion of an individual claim.

For these reasons, and for others not necessary to be considered, the bill was entirely devoid of equity, and was properly dismissed.

Affirmed.