# Street *v.* Sinclair.

*Trespass de bonis asportatis by Mortgagor against Mortgagee.*

1. *When mortgagee of personal chattels not a trespasser.*—Under a power contained in a chattel mortgage authorizing the mortgagee, on default, to take possession of the mortgaged property without process of law, and to sell the same, the mortgagee has the right, after default, to enter upon the premises of the mortgagor, and, without his consent and against his will, to take possession of the property, provided he does so peaceably and without violence or other breach of the public peace; and such taking, being the exercise of a right, will not constitute him a trespasser. (STONE, J., *dissenting.*)

2. *Trespass de bonis asportatis; measure of damages.*—In trespass *de bonis asportatis,* founded on a mere wrongful taking, unaccompanied by any act of wantonness, malice or gross negligence, the measure of damages is the value of the plaintiff's interest in the property at the time of the trespass, and not the value of the property itself.

3. *Same.*—Hence, in such action brought by a mortgagor against a mortgagee for the wrongful taking of the property conveyed by the mortgage, the defendant is entitled to prove, in mitigation of damages, the amount due on the mortgage debt.

4. *Ratification by principal of agent's trespass; admissibility of evidence.*—In an action of trespass by a mortgagor against a mortgagee, founded on the unauthorized wrongful seizure and asportation of the mortgaged property by the defendant's agent, a letter written by the plaintiff to the defendant, and delivered to him, giving an account of the manner in which the property was seized and carried away, and demanding its return, is competent evidence for the plaintiff for the purpose of proving a ratification by the defendant of his agent's act, when it is shown that the letter contained a correct version of the alleged trespass, and its contents are presumptively shown to have been known to the defendant. But the letter itself should be produced, or a proper predicate laid for secondary evidence of its contents.

5. *When damages are too remote.*—In trespass for wrongfully seizing and carrying away plaintiff's live stock while he was engaged in farming, damages resulting therefrom to his farming operations are too remote, speculative and contingent to be recovered.

6. *Admissibility of evidence.*—A statement by a witness on the trial of an action of trespass *de bonis asportatis,* that the plaintiff *consented* to the taking of the property by the defendant, is the assertion of a fact, and not of a mere opinion, and is, therefore, admissible evidence. The nature of such consent may be shown on cross-examination.

7. *Same.*—It is always competent for a witness to give any pertinent reason for the accuracy of his recollection of a fact to which he has testified; and hence he may state that he had consulted counsel in reference

[Street v. Sinclair.]

to the matter of dispute; but it is not permissible in such case for him to state what advice his counsel gave him.

8. *When charge invasive of province of the jury.*—The jury are not compelled to find according to the mere preponderance of the evidence, unless it produces a reasonable conviction, or satisfaction of the mind; and hence, a charge instructing the jury that "if the weight of evidence is in favor of the plaintiff, he should recover," is an invasion of the province of the jury, and erroneous.

APPEAL from Clay Circuit Court.

Tried before Hon. LeRoy F. Box.

Alex. C. Sinclair, the appellee, commenced this action on the 5th of January, 1878, against Merit Street, George W. Dillard, the appellees, and one W. A. Davenport, to recover "one thousand dollars damages for wrongfully taking the following goods and chattels, the property of plaintiff, viz: One mule and one mare, of the value of three hundred dollars." W. A. Davenport was not found, and service was only had on the other two defendants, who pleaded separately "not guilty, with leave to give in evidence any thing that might be specially pleaded;" and on the issue thus made the cause was tried.

It appears from the bill of exceptions that on the 24th of March, 1874, the plaintiff and his brother, John C. Sinclair, being indebted to the defendant Street in the sum of $60.00, and also in the sum of $55.52, as evidenced by their two joint promissory notes payable on 1st November, 1874, executed to him a mortgage covering the property mentioned in the complaint, together with other property, real and personal, to secure said indebtedness. This mortgage provides that, if any part of said indebtedness should remain unpaid after the 1st of November, 1874, "then the party of the second part [Street], his agent, heirs or assigns are hereby authorized to take absolute possession of any or all of said property without any process of law, and sell the same at such time and place as he, his agent, heirs or assigns may elect, to the highest bidder at public outcry," etc. On the 7th of March, 1877, Dillard and Davenport, as the agents of the defendant Street, came to the plaintiff's house, bringing with them said notes and mortgage, which they read to plaintiff and requested payment in the name of Street. Not receiving payment, they took the mare and mule mentioned in the complaint out of the plaintiff's horse lot, and carried them off and delivered them to Street. The evidence is conflicting in reference to the circumstances under which they obtained possession of the mare and mule. The testimony of the plaintiff and his witnesses tended to show, that after the notes and mortgage were read to plaintiff, and payment requested of him, he stated to Dillard and Davenport that he did not have the money, but that if they would wait he would see Street and fix it up with him; to which one of

them replied that they would have the stock any way; that the plaintiff objected to their taking the stock, and forbade them taking it; but that they disregarded his objections, and went into the horse-lot of plaintiff and took the mare and mule and carried them off with them. The testimony of Dillard and Davenport, witnesses examined on behalf of the defendants, however, tended to show, that after they had read the notes and mortgage to the plaintiff, they told him that they had been instructed to collect the money, if he would pay, and if he would not, to get the papers renewed; that the plaintiff refused to renew the papers, and told them that they could get the mare and mule, and that said animals were in his lot; and he then walked to the lot with them, pointed out the mare and mule to them, and they thereupon took them and delivered them to Street, telling him how they had obtained possession. The foregoing is the substance of the versions of the two sides as to the circumstances attending the taking of the mare and mule from the plaintiff's possession. There was no evidence of any violence on the part of Dillard and Davenport, nor was there any evidence of any resistance on the part of the plaintiff, other than as above stated.

On the cross-examination of the plaintiff, who was examined as a witness on his own behalf, the defendants asked him how much he owed the defendant Street on the mortgage debt at the time his mare and mule were taken. To this question the plaintiff objected, and his objection was sustained by the court, and the defendants excepted. The defendants then offered to read the notes and mortgage in evidence, but the plaintiff objected, and the court having sustained the objection, the defendants excepted. The witness was then allowed by the court, in answer to a question put to him by the defendants, to state that he was in debt to the plaintiff at the time of the alleged trespass, but, on his objection, the court refused to allow him to state the amount of such indebtedness, and the defendants excepted. The notes and mortgage were then read to the jury "as a part of the evidence of what was said and done at the time the witness was speaking of." In rebuttal, the plaintiff was asked by his counsel how he remembered so distinctly that he refused to give up the mule and mare, and to state whether or not he had been advised by counsel to refuse to give them up. The defendants objected to this question, but their objection was overruled, and they excepted. He replied that he had been advised by his counsel to object to the taking of the property before it was taken. The defendants objected to this answer, but their objection was overruled, and they excepted. The plaintiff was also asked by his counsel what plow-stock he had the year when his mare and mule were taken, and

[Street v. Sinclair.]

he replied that he had no other stock than said mare and mule. To both the question and answer the defendants separately objected, but their objections were overruled, and they excepted. He further testified that he was engaged in farming and had begun to pitch his crop, or had made arrangements to do so, when his said stock was taken from him. To this testimony the defendants also objected, but the court overruled their objection, and they excepted.

The said Davenport was not present at the trial, but a showing was made as to what he would prove, which was offered in evidence by the defendants. In this showing it was stated that the plaintiff "first objected to delivering the property to Dillard for Street, but then consented." To this part of the showing the plaintiff objected, and he also objected separately to the word "consented." The court sustained the objection, and refused to allow that part of the showing to be introduced in evidence, and the defendants excepted. The defendant Street was also examined as a witness for the defendants, and testified that he sent Dillard to collect the debt or get it renewed, but that he gave him positive instructions not to take the property by force, and to let it remain unless the plaintiff consented to deliver it. He also testified that the notes secured by the mortgage were not fully paid. On cross-examination, the plaintiff asked this witness whether one John Machen came to him with a letter from plaintiff written by counsel, informing him of the manner in which the property had been taken, and demanding its return, in a few days after the mare and mule were taken. To this question the defendants objected, but their objection was overruled, and they excepted. The witness replied, that "he thought they claimed the property taken;" and to this answer the defendants objected, and the court having overruled their objection, they excepted.

The court, in its general charge, instructed the jury, among other things, as follows: (1) "If you should find from the evidence that Street had a mortgage on the mare and mule, which was past due at the time of the taking, that alone would confer no right upon the defendants to take possession of the mortgaged property, against the will and without the consent of the plaintiff." (2) "If you find from the evidence that the property was taken by the defendants from the possession of the plaintiff against his will and without his consent, and notwithstanding the plaintiff at the time forbid the taking, then the mere fact that the plaintiff owed Street a debt at the time, which was secured by a mortgage on the property, would not justify the taking." (3) "Threats or actual physical force are not required to constitute a wrongful taking." (4) "If you believe from the evidence that the plaintiff forbid the taking, and

8

that the defendants took the property notwithstanding they were so forbidden, the taking would be wrongful." To each of the above portions of the general charge the defendants excepted. The court, in its general charge, also instructed the jury as to the rules relating to vindictive or exemplary damages, to which exceptions were reserved by the defendants. But the instructions on this point are not necessary to a correct understanding of the opinion. The court also instructed the jury, at the request in writing of the plaintiff, that "if the weight of evidence is in favor of the plaintiff, he should recover damages." To this charge the defendants excepted.

Judgment was rendered in favor of the plaintiff on verdict, from which the defendants appealed, and now assign as error the rulings of the Circuit Court above noted.

PARSONS & PEARCE, for appellants.

A. S. STOCKDALE, *contra*.

(No briefs came to the hands of the reporter.)

SOMERVILLE, J.—This is an action of trespass by a mortgagor against a mortgagee, for entering the premises of the plaintiff and carrying away certain personal property, a horse and a mule, conveyed by the mortgage. The taking was done by the mortgagee's agents, who are jointly sued with him in this case, and, in point of time, the asportation occurred after the law-day of the mortgage.

It is true that a mortgagee may be liable in trespass or trover to a mortgagor for wrongfully disturbing the latter's possession. The question is, under what circumstances will such disturbance be considered wrongful, where an express power is conferred by the mortgage itself *authorizing* the mortgagee, or his agent, to take possession of the mortgaged property—for such is this case. Upon default, it is plain, that the title to the property at law became vested absolutely in the mortgagee, the only interest remaining in the mortgagor being a mere equity of redemption. The power to take possession and to sell is a power coupled with an interest, creating by contract a license in favor of the grantee which becomes irrevocable without his consent. It is an essential part of the consideration of the mortgage, and it can not, either in law or in good faith, be revoked by the grantor without mutual consent. To abrogate such a power would be to seriously impair the obligation of the contract. *Richer v. Kelly*, 10 Amer. Dec. 41, *note*. It, furthermore, carries with it every right reasonably necessary to its execution. Hence, it has been often adjudged, that where the owner of

land sells goods situated on the premises to the defendant, a license to enter and take them is implied by the contract of sale. 2 Greenl. Ev. § 627; *Nettleton v. Sikes*, 8 Metc. 34. If it was necessary, therefore, to enter the premises of the mortgagor in order to reduce the property to possession and execute the power of sale, this the mortgagee, or his agent, could do in a peaceable and lawful manner without becoming a trespasser, unless a distinction could be made where he had been forbidden originally to enter the premises under reasonable apprehension of a breach of the peace. But on this point we express no opinion.—Code, § 4419. It is said in Jones on Chattel Mortgages: "To an action of trespass by the mortgagor against the mortgagee for entering the mortgagor's premises and carrying away the mortgaged chattels, it is a good defense that the mortgage had been forfeited."—§ 434. The principle is correctly stated, we think, at least as applicable to cases where the mortgage contains a power of sale vesting in the mortgagee an irrevocable license to enter and take possession on default. The precise point was so adjudged by the Supreme Court of Wisconsin, in *Nichols v. Webster*, 1 Chand. (Wis.) 203, and by the Supreme Court of Massachusetts, in *McNeal v. Emerson*, 15 Gray, 384. See, also, Herman on Chat. Mortg. § 96; *Satterwhite v. Kennedy*, 3 Strob. 457; *London Co. v. Drake*, 6 C. B. (N. S.) 798; *Sterling v. Warden*, (51 N. H. 217) 12 Amer. Rep. 80; 1 Waterman on Trespass, § 167. The case of *Thornton v. Cochran*, 51 Ala. 415, was clearly based upon the fact that the mortgagee carried with him a deputy sheriff, whom he had indemnified by bond, to "levy" upon the mortgaged property, and this was construed into a taking by threats, or constructive force.

The seizure of the property by the mortgagee, in such a case, should of course be effected without force or violence. The same rule must govern as in cases of recaption. It must not be perpetrated "in a riotous manner, or attended with a breach of the peace."—3 Black. Com. 4; *Bobb v. Bosworth*, 12 Amer. Dec. 273. Subject to this limitation, the owner of personal property, wrongfully withheld from him, may have redress by his own act without resorting to the delay of litigation. But he proceeds at his own peril if he commit the slightest assault, or other breach of the public peace, for, if individuals were thus allowed to redress their own private injuries, the peace of society and good order of government would cease.

The court erred, in our opinion, in charging the jury that the power of sale in the mortgage, after default, would confer no right on the defendants to take possession of the mortgaged property, against the will or without the consent of the mortgagor.

The rule as to the measure of damages in cases of this nature

is well settled. For a mere wrongful taking, unaccompanied with any acts of wantonness, malice or gross negligence, the measure of damages would be the *value of the plaintiff's interest in the property* at the time of the trespass, and not the value of the property itself. The mortgage debt, or other lien, held on the property by the mortgagee, or lienee, must·be deducted by way of recoupment.—*Bird v. Womack*, 69 Ala. 390; Waterman on Tresp. § 623; Jones on Chat. Mortg. § 437; *Blodgett v. Blodgett*, 48 Vt. 32. The appellants, under this view of the law, should have been permitted not only to introduce the mortgage in evidence, but also to prove the amount of the mortgage debt remaining unpaid.

The principal who employs an agent is not responsible for an unauthorized trespass committed by the latter. He may, however, become liable by a ratification and adoption of an unindictable trespass committed in his name and for his benefit, if he have full knowledge of its tortious nature.—1 Waterman on Trespass, § 28. If it had been shown that the letter from plaintiff to the defendant Street, which was carried to the latter by Machen, contained a correct version of the alleged trespass, and its contents were presumptively known to Street, this would be competent as tending to prove the fact of ratification. But the letter itself should have been produced, or else a proper predicate laid for secondary evidence of its contents.

The evidence introduced to show a special damage to plaintiff in his farming operations was irrelevant. No special damages are laid in the complaint, and, if they were, that sought to be proved would be too remote, speculative and contingent to be recovered.—*Pollock v. Gantt*, 69 Ala. 373; Jones' Chat. Mortg. § 437; *Burton v. Holley*, 29 Ala. 318.

The statement of the witness, Davenport, that the plaintiff *consented* to the taking of the mortgaged property by defendants was the assertion of a fact and not of a mere opinion. The nature of the consent could have been elicited on cross-examination.

It is competent always for a witness to give any pertinent reason for his accurate recollection of a fact to which he testifies. He may, therefore, state that he had consulted counsel in reference to a matter of disputation in evidence, but he should not be permitted to testify as to what the advice was.—*Adams v. Robinson*, 65 Ala. 586.

We can not see from the bill of exceptions that there is any evidence in this case supporting the charges of the court on the subject of exemplary damages. These charges were, for this reason, calculated to mislead the jury.

It was error to charge the jury that "if the *weight of evidence* is in favor of the plaintiff, he should recover damages." This

[Nathan Bros. v. Shivers.]

was an invasion of the province of the jury. They are not compelled to find according to the mere preponderance of the evidence, unless it produces a reasonable conviction or satisfaction of the mind.— *Wilcox v. Henderson*, 64 Ala. 535; *Mays v. Williams*, 27 Ala. 267.

The judgment of the Circuit Court must be reversed and the cause remanded.

STONE, J.—I dissent from the opinion of the majority of the court, and think the rule declared will naturally lead to disorder and violence. Public peace is of more importance than the possession of a chattel, even by the rightful owner. In my opinion a mortgagee has no right to go on the premises of another, and there, without the consent, and against the pronounced objection of the mortgagor, take and carry away the chattel, even though the law day of the mortgage is passed, and the mortgage debt remains unpaid. I call such proceeding force; such force, as in the case of *Bobb v. Bosworth*, 12 Amer. Dec. 273, S. C. Lit. Sel. Cases, 81, it was declared authorized resistance by force. A seizure of one's own property can not, at one and the same time, be a lawful seizure, and yet authorize resistance by force. The two rights are incompatible. A taking of one's own property without process can be justified only when the circumstances are such that resistance to such seizure would be a tort and a trespass. This I understand to be the true rule. Such was, in substance, the rule declared in *Thornton v. Cochran*, 51 Ala. 415. The sylabus of that opinion is made part of the text in Wait's Actions and Def. vol. 6, 97. See, also, same vol. 120; *Huppert v. Morrison*, 27 Wisc. 365. I think my brothers have departed entirely from the principle declared in *Thornton v. Cochran*, *supra*. See, also, *Turnley v. Hanna*, 67 Ala. 101; Cooley on Torts, 168; *Churchill v. Hulbert*, 110 Mass. 42; S. C. 14 Amer. Rep. 578; 1 Hil. on Torts, 204.