[Brady v. Huff.]

# Brady *v.* Huff.

*Statutory Real Action in the Nature of Ejectment.*

1. *Tenants in common; adverse possession.*—The seizin and possession of a tenant in common constitute the seizin and possession of his co-tenants; and an uninterrupted exclusive possession by him is not usually deemed adverse, unless accompanied by circumstances indicating an expulsion or ouster of his co-tenants.

2. *Cancellation of deed to land; effect of.*—The mere cancellation of a deed to land, without a reconveyance, does not operate to reinvest the grantor with the legal title.

3. *Tenants in common; adverse possession.*—A public repudiation by a tenant in common of his co-tenant's title, and a hostile claim of exclusive ownership in himself, operate at once to set in motion the statute of limitations against the co-tenant.

4. *Possession of part of tract of land under color of title; effect of.* Where one in possession of land holds under color of title, and there is no antagonistic possession, the actual possession of a part of the premises will be regarded as constructive possession of the whole according to the boundaries contained in the deed or other muniment of title.

5. *Forcible entry and detainer; effect of judgment on prior actual possession.*—An action of forcible entry and detainer is strictly possessory, and can only be sustained by proof of prior *actual* possession, mere *constructive* possession being insufficient to support it; and hence, a judgment in such action in favor of the plaintiff is, as to the fact of prior actual possession, *res adjudicata,* in a statutory real action in the nature of ejectment, brought by the defendant against the plaintiff in the judgment, or against a purchaser from him, for a recovery of the possession of the premises.

APPEAL from Perry Circuit Court.

Tried before Hon. EDMUND W. PETTUS, acting as Special Judge.

The facts are sufficiently stated in the opinion.

WM. M. BROOKS, for appellant.

JNO. F. & E. M. VARY, *contra.*

SOMERVILLE, J.—The action is one in the nature of ejectment, under the statute, for a tract of land containing about four hundred acres, thirty acres of which were arable and enclosed by fence, and the remainder unenclosed woodland. The plaintiff and the defendant each claim title from the same source by conveyances from one William Huntington, the original owner.

The plaintiff, Brady, exhibited the following chain of title:

(1) A deed of trust from William Huntington, dated April 4, 1840, conveying the land to one Hodge, *as trustee*, to secure a debt due one Samuel Hildeburn, of Philadelphia. (2) A deed from Hodge, *as trustee*, executed under the power conferred by the trust-deed, dated May 4, 1844, conveying the land to Hildeburn, the beneficiary and creditor. (3) A deed from Mrs. Elizabeth Hildeburn, the executrix of Samuel Hildeburn, to the plaintiff, Brady, dated November 29, 1859, which was introduced in connection with what was claimed to be a probated copy of Hildeburn's last will and testament.

The title of the defendant Huff, on the contrary, was supported by the following evidence : (1) A deed from William Huntington, the original owner, dated November 9, *1838*—prior, as will be noticed, in point of time to plaintiff's deed from the same source. This deed purports to be for a valuable consideration, and conveys the land in controversy to Thomas G. Wallace and John Huntington. It was never recorded, but it is shown that very soon after its delivery, Wallace, one of the vendees, went into possession of the lands, under the deed, and cultivated the enclosed portion, through himself and his tenants, until the year 1860. (2) He further exhibited two judgments in his favor for forcible entry and detainer, brought in a justice's court for the possession of the lands, and taken by appeal to the circuit court of Perry county—the one recovered in the year 1863, and the other in 1867. (3) A written endorsement of John Huntington, the co-vendee of Wallace, made upon the original deed from William Huntington, declaring the deed of purchase, as to himself, *rescinded and cancelled*. In this connection it was shown that Wallace had made an open announcement of his adverse claim of exclusive ownership to the lands by *public notice* given at the sale made by Hodge to Hildeburn in May, 1844 ; and that, being at that time in possession, he remained so until September, 1872, when he sold to the defendant, except for the period of time when he was unlawfully ousted by the forcible entry and detainer of Brady. (4) The defendant, Huff, further introduced a deed from Wallace to himself, dated in September, 1872, under which he continued to hold until the commencement of the present suit in June, 1881.

There was some evidence in the cause which tended to show, perhaps, that the deed of November, 1838, from William Huntington to Wallace and John Huntington was fraudulent as to the then existing creditors of the grantor. Evidence was also offered of some admissions on the part of Wallace, made as late as the year 1858 or 1859, that he was owner of only a part of the land, and not of the whole.

The court charged the jury, at the request of the defendant's

6

[Brady v. Huff.]

counsel, that if they believed the evidence they must, under the foregoing state of facts, find for the defendant.

We are of opinion that there was no error in this charge. The action of the plaintiff was barred by lapse of time, and this afforded a complete defense, irrespective of other matters urged in defense, needless to be discussed.

It is true, as insisted by appellant's counsel, that when Wallace went into possession of the lands under the deed of November, 1838, executed by William Huntington to John Huntington and himself, he did so in the capacity of a co-tenant, and his occupancy was presumptively friendly and not adverse to the title of John Huntington. This is upon the familiar principle that the seizin and possession of one tenant in common is the seizin and possession of the other or others, and an uninterrupted exclusive possession by one is not usually deemed adverse, unless accompanied by circumstances indicating an expulsion, or ouster of the other.—Angell on Lim. p. 426, § 419; *Abercrombie v. Baldwin*, 15 Ala. 363.

The facts, however, show very clearly such an unequivocal assertion of hostile and exclusive ownership on the part of Wallace as amounted to an ouster of the only person who could justly claim to be his co-tenant. John Huntington, as we have said, was never personally in actual possession of these lands. He is shown to have rescinded his purchase and abandoned his claim of interest in them as early as 1840, which was four years before Hildeburn purchased from Hodge at the trust sale. It is obvious that the mere cancellation of the deed, without a reconveyance, did not operate to reinvest William Huntington with the legal title to the lands. The most it could do was to give him a mere equity to the undivided half interest of John Huntington.—*Smith v. Cockrell*, 66 Ala. 64. It is claimed that this half interest, at least, passed to Hildeburn by purchase at the sale made by Hodge in 1844. Let us concede this to be true. The claim of title made by Wallace at this sale was unequivocally adverse in its character, and was brought home to the knowledge of the purchaser. It was a public repudiation of the alleged co-tenant's title, by a hostile claim of exclusive ownership in himself. It operated at once to set in motion the running of the statute of limitations against Hildeburn, who, having purchased at the sale, was chargeable with notice of the adverse claim. The statute began to run against Hildeburn, therefore, in whatever capacity he claimed, whether as co-tenant, claiming an undivided half interest, or as purchaser claiming the whole.

This adverse possession of Wallace, thus inaugurated in the year 1844, is shown to have continued uninterrupted until the

[Brady v. Huff.]

year 1860, a period of about sixteen years. There is no proof that during this time the continuity of his possession was broken, or the exclusive character of his claim repudiated, except by a casual admission verbally made. as late as the year 1859—long after the bar of the statute must be presumed to have been complete.

It is not denied that, in ordinary cases, where one in possession of lands holds under color of title, and there is no antagonistic possession, the actual possession of *a part* of the premises will be regarded constructively as a possession of the whole, to the extent of the boundaries described in the deed, or other written muniment of title. Such is unquestionably the established rule.—*Farley v. Smith*, 39 Ala. 38; Trial of Titles to Land (Sedg. & Wait), §§ 763, 769. Under its influence, unless there be some principle making the present case an exception, the actual possession of the thirty acres of enclosed land by Wallace, under the deed from William Huntington, would be constructively extended so as to include the whole tract, commensurate with its described boundaries.

But it is insisted that *good faith* is a necessary ingredient in *constructive* possession, although it may not be requisite in actual possession, and, therefore, as the deed under which Wallace claimed may have been fraudulent, the element of *bona fides* was wanting, and for this reason his possession should be confined to a *possessio pedis*, limited to the thirty acres of enclosed land, and could not be extended further by construction.—Trial of Title to Land (Sedg. & W.), § 775, and cases cited. Admitting this view of the law to be correct, it can avail the plaintiff nothing in this action, because the whole question of Wallace's possession was settled adversely to the plaintiff in the two actions of forcible entry and detainer brought by him against Brady, the plaintiff, in the years 1863 and 1867. Actions of this class are strictly possessory and can be sustained only by proof of prior *actual* possession; mere constructive possession being insufficient to support them. *Houston v. Farris*, 71 Ala. 570; 2 Brick. Dig. § 35. The fact of Wallace's actual possession of the entire tract of land in controversy, must be regarded as *res adjudicata* as to Brady. It was a point necessarily involved, and one which must have been actually decided in these possessory actions, as a finding upon it was necessary to uphold the two judgments, which were adverse to Brady and in favor of Wallace.—*Norwood v. Kirby*, 70 Ala. 397; *McCalley v. Robinson*, 70 Ala. 432; *McDonald v. Mobile Life Ins. Co.*, 65 Ala. 358; Trial of Title to Land (Sedgw. & W.), § 94.

And it is manifest that the estoppel created by these judgments, and the finding of facts on which they are based, will

operate in favor of the defendant, Huff, as effectually as for Wallace, because there is an immediate privity of title or estate between them.   It is well settled that *privies*, whether in estate, blood, or by operation of law, are as fully concluded by judgments as *parties* are.—*Crow v. Hudson*, 21 Ala. 560; *McLelland v. Ridgeway*, 12 Ala. 482.

This view of the case is sufficient to justify the charge of the court without more.   The plaintiff's right of action was barred by the statute of limitations of ten years, prior to any declarations by defendant tending to relinquish or modify the hostile character of his previous adverse possession.

We could probably reach the same conclusion by a different process of reasoning.   The entry of Brady upon the lands, under his deed of purchase from Mr. Hildeburn, bearing date in November, 1859, would not, we are strongly inclined to think, interrupt the continuity of Wallace's adverse possession. The possession thus acquired was wrongful in its incipiency, and was so adjudged to be in the actions of forcible entry and detainer.   The intruder was adjudged to be a trespasser, and, in as much as these actions were instituted within the period of time authorized by the statute, and were prosecuted to a successful termination, it would seem that the wrongdoer ought not to be permitted to invoke his wrongful act, done in violation of law, to stop the running of the statute of limitations. *Turnley v. Hanna*, 67 Ala. 101.   The interruptions of a trespasser will not generally break the continuity of an adverse possession, if promptly and effectually litigated.—*Ladd v. Dubroca*, 61 Ala. 25; *Bell v. Denson*, 56 Ala. 444; *Farmer v. Eslava*, 11 Ala. 1028; Angell on Lim. § 413, p. 418, *note* 2. The statute allows three years within which such rights may be redressed, and delay occasioned by procrastinating continuances can avail nothing, if the plaintiff is ultimately successful in his action.—Code, 1876, § 3705.   It is unnecessary, however, for us to decide this point, and we refrain from doing so. It is obvious that, under the influences of the principle, making due allowance for the suspension of the statute of limitations during the period of the war between the States, extending from 1861 to 1865, the bar of the statute would be complete by virtue of Wallace's and Huff's adverse possession extending from 1860 to the year 1881, when the present action was commenced.   We rest our decision, however, upon the first point, and are satisfied that the charge of the court, and the consequent finding of the jury were free from error.

The judgment is accordingly affirmed.