# Tomlinson *v.* Watkins.

*Bill in Equity for Cancellation of Deed, as Cloud on Title.*

1.   *Cancellation of deed as cloud on title; when refused.*—When the
complainant acquired his possession by force and arms, or other unlaw-
ful means, a court of equity will not interfere to protect it by cancelling
a deed as a cloud on his title.

2.   *Cancellation of conveyance by husband and wife; ignorance of con-
tents.*—A conveyance of the wife's property, duly executed by her and
her husband, will not be cancelled and set aside, at her instance, on
averment " that she was induced and pursuaded by her said husband to
sign said deed, without knowing the purport and effect thereof."

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 28th February,
1880, by Mrs. Georgiana A. Tomlinson, the wife of William
D. Tomlinson, against Henry H. Watkins, Bryant Johnson,
and said William D. Tomlinson; and sought the cancellation
of a deed executed by said Johnson to said Watkins, convey-
ing a tract of land of which the complainant had possession, as
a cloud on her title; and the general prayer was added, for
other and further relief.   The tract of land, which contained
four hundred acres, and on which was situated a saw and grist-
mill, had belonged to said W. D. Tomlinson, and was conveyed
by him, by deed dated March 10th, 1868, to P. D. Page and
William Beard, as trustees for his wife, in consideration, as re-
cited, of his indebtedness to her for moneys and property be-
longing to her statutory separate estate, which he had wasted
and converted to his own use; the *habendum* clause being "to
the said Page and Beard, and their successors in office, as trus-
tees of the said Georgiana Tomlinson, in trust as aforesaid, to
the sole and separate use and benefit of the said Georgiana, her

heirs and assigns forever, free from any and all control or do-
minion on my part whatever; it being the intention of this
deed that the same shall restore to her said trust estate, in part,
the value of so much thereof as has been by me destroyed, as
herein set forth, in violation of my duty as trustee in the prem-
ises, the same to operate in perpetual bar of myself and all
other persons claiming or pretending to claim by, through, or
under me." On the 5th April, 1873, by deed of that date, duly
executed, and attested by two witnesses, Tomlinson and wife
conveyed an undivided half interest in said tract of land to said
Bryant Johnson, on the consideration, as therein recited, of one
thousand dollars in hand paid; but the bill alleged, that said
Johnson also executed and delivered to Tomlinson, as part of the
consideration, his three promissory notes for $666.66 each, pay-
able to the complainant, and three other notes for the same
amount, payable to James Cunningham, to whom said Tomlin-
son was indebted, and to whom said three notes were delivered by
him; and that, to secure the payment of these several notes,
Johnson and his wife executed to said Tomlinson and Cunning-
ham a mortgage on said tract of land, with the mill and im-
provements. A copy of the deed from Tomlinson and wife to
Johnson was made an exhibit to the bill, and also a copy of the
mortgage executed by Johnson to Tomlinson and Cunningham.
As shown by these exhibits, the deed recites a consideration of
one thousand dollars in hand paid, and does not mention the
notes; and the mortgage purports to be given to secure only
the three notes payable to Cunningham.

The original bill alleged, that the sale and conveyance to
Johnson "was made without the knowledge or consent of your
oratrix, and she has never realized anything from said sale, nor
has her said husband, as her trustee, received any consideration
in her behalf;" but, by amendment, these allegations were
struck out, and the following inserted: "Oratrix further states
and avers, that she was induced and persuaded by her said hus-
band to sign said deed, without knowing the purport and effect
thereof; that she did not then, and has never since, realized or
received anything from said sale, nor has her said husband, as
her trustee, received any consideration in her behalf; that the
only money realized on said sale was the amount paid to said
Cunningham by said Johnson on said mortgage, as heretofore
alleged; and that said deed was delivered by her said husband
to said Johnson, who thereupon went into the possession of said
land."

On the same day this deed and mortgage were executed
(April 5th, 1873), another deed was executed to said Johnson
by said James Cunningham, who claimed to have bought an
interest in the land at sheriff's sale against said Tomlinson, and

[Tomlinson v. Watkins.]

who conveyed by his deed an undivided half interest; the purchase-money being secured and paid by the three notes above mentioned. Johnson continued in the possession of the land until May 18th, 1874, when he sold the property to said Tomlinson and H. H. Watkins, who wished to form a partnership in the mill business. The agreed purchase-money was $2,666, of which amount Watkins advanced $666, and Tomlinson paid the residue with the three notes above mentioned, which had been taken payable to Mrs. Tomlinson, the complainant; but the agreement was, that each party was to have an equal interest in the land and mill property. On the same day (May 18th, 1874), Johnson and his wife executed a deed conveying the entire property to said Watkins, on the recited consideration of $300; and another deed conveying the entire property to the complainant, on the recited consideration of $2,000. This is the conveyance under which the complainant claimed the property, and the conveyance to Watkins is the deed which she asked to have cancelled as a cloud on her title.

Tomlinson and Watkins carried on the mill business as partners for several years, but finally disagreed, and a bill was filed to settle their partnership matters. On the evening of the 8th November, 1879, the complainant took possession of the property, her son acting as her agent; and she was in possession when her bill was filed. Watkins stated in his answer, and also testified as a witness in his own behalf, that the possession was taken forcibly, several of the party being armed with guns and pistols, and making threats of violence if any resistance were offered; while the complainant's witnesses denied that any force or threats were used, and said that the persons present at the time, who had guns, had been out duck-hunting, and stopped at the mill by chance.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that Tomlinson's deed to Page and Beard, as trustees, created an equitable separate estate, which the complainant might charge or convey without restriction; and that neither the allegations of the bill, nor the proof, showed any ground for setting aside the deed to Bryant Johnson. The complainant appeals from this decree, and here assigns it as error.

GEO. R. FARNHAM, and STALLWORTH & BURNETT, for appellant.

S. J. CUMMING, and P. D. BOWLES, contra.

STONE, C. J.—It is very questionable if the possession of the complainant was not acquired under such circumstances as

[Tomlinson v. Watkins.]

that chancery will not lend its aid for its protection.—*Turnley v. Hanna*, 67 Ala. 101.

One purpose of this bill is to avoid the force of a conveyance to Bryant Johnson, made by Tomlinson and wife (the latter the complainant in this suit) in April, 1873. That deed conveyed only an undivided half interest in the lands in controversy. The averments of the bill do not make a case for setting aside that conveyance; and if they did, there is a fatal want of proof to make out this feature of the case.—*Miller v. Marx*, 55 Ala. 322; *Coleman v. Smith, Ib.* 368; *Dawson v. Burrus*, 73 Ala. 111; *Yonge v. Hooper, Ib.* 119.

Johnson and wife conveyed the property to Watkins, the appellee, and thereby conveyed to him all the title acquired by the deed of Tomlinson and wife. This was, at least, a conveyance of the legal title to an undivided half of the land. The chancellor did not err in refusing to vacate the deed to Watkins, for more reasons than one. First, it vested a legal title in the latter, subject, perhaps, to any claims Mrs. Tomlinson may have under the contract with Johnson. If it be supposed the legal title had re-vested in Mrs. Tomlinson, because the mortgage given by Johnson was over-due, and not paid, the answer is two-fold: The mortgage is made to W. D. Tomlinson and Cunningham—not to her; and in equity, a mortgage is only a security for money, and this is a proceeding in equity. *Toomer v. Randolph*, 60 Ala. 356. Second, the deed contains covenants of warranty, giving to Watkins a right of action against Johnson, in the event of his eviction.

The bill in this case, as framed, entitles the complainant to no relief, and the chancellor did not err in dismissing it. It would seem that Mrs. Tomlinson, if she desires it, is entitled to a quit-claim re-conveyance of an undivided half of the land, or a declaration that the deed to Watkins vests in him only an undivided half interest. He claims only that much. But this bill is wanting in necessary frame and averments to obtain such relief. It may be, also, that she can enforce her claim for the purchase-money promised by Johnson, and never paid by him; but it seems W. D. Tomlinson employed those notes in re-purchasing the lands in joint adventure with Watkins. That half interest, it is shown, was purchased for Mrs. Tomlinson's benefit. This record fails to show that Watkins has violated any of the stipulations he entered into.

The decree of the chancellor is affirmed.