# Espalla *v.* Gottschalk.

*Forcible Entry and Detainer.*

1. *When administrator may maintain action.*—An administrator, whose right and title relate back to the intestate's death, may maintain an action of forcible entry and detainer, or unlawful detainer (Code, §§ 3380–81 , against a person who, with his wife, was living on the premises with the intestate at the time of his death, "as his friends, by his invitation and request, and without any claim or right of possession," and who, being left in possession by the administrator under appointment as special administrator only, "on the understanding and their agreement to hold the same as his tenants until further orders," afterwards attorned to another person as landlord ; and he may also maintain the action against such third person, and against any tenant placed by him in possession after the removal of the attorning tenant.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. WM. E. CLARKE.

This action was brought by Joseph Espalla, as administrator of the estate of Silas Holloway, deceased, against William Gottschalk and his tenant in possession, Henry Rogers ; and was commenced in a justice's court, on the 2d December, 1890. The complaint contained three counts, each of which alleged that the plaintiff, as administrator, was in the peaceable possession of the premises on the 13th March, 1889 ; the first count further alleging that "the defendants peaceably entered on the premises while so in his possession, and then turned plaintiff out of possession by unlawfully refusing to deliver up possession of the same to him, on his demand in writing made on the 29th November, 1890 ;" the second count, that the defendants, "by force and strong hand, &c., entered upon said premises, and expelled plaintiff's tenant, and detain the same by force ;" and the third count, that the defendants "lawfully entered into the possession of said premises, and, after the termination of their possessory interest, refused to deliver possession thereof to plaintiff on his demand in writing." The defendants pleaded not guilty, and adverse possession for three years before suit brought; and issue was joined on these pleas. On the trial in the Circuit Court, to which the case was removed by appeal, the court charged the jury, on request, to find for the defendants if they believed the

[Espalla v. Gottschalk.]

evidence; and this charge, to which the plaintiff excepted, is now assigned as error.

R. INGE SMITH, for appellant.

R. P. DESHON, contra.

STONE, C. J.—This was an action of forcible and unlawful detainer, the complaint being framed in varying counts to suit possible varying phases of the proof. The subject of the suit was a lot of ground and a tenement thereon. After the trial before a justice of the peace, an appeal was prosecuted to the Circuit Court, and verdict and judgment were there rendered for the defendant.

There does not appear to have been any conflict in the testimony proving the following state of facts : Silas Holloway, plaintiff's intestate, died February 14, 1889. At that time, and for many years prior thereto, he had been in the undisputed possession of the land sued for, resided upon it, and claimed it as his own. His claim of title and possession dated back to February, 1882. "For many years prior, and up to, and at the time of said Holloway's death, one Turner and his wife lived with him in the house on said premises, as his friends, and by Holloway's invitation and request, without any claim or right of possession as against said Holloway." On February 16, 1889—two days after Holloway's death, Joseph Espalla, jr., plaintiff in this suit, was appointed and qualified as special administrator of his estate. On March 13, 1889, the said Espalla received a general appointment as such administrator, and qualified as such.

On the day of the special appointment, or the next day, Espalla repaired to the late residence of his intestate, and took possession of his personal effects, Turner and his wife aiding him. He also asserted possession of the realty, "and left said Turner and wife in possession of the same as plaintiff's tenants, on the understanding and on their agreement to hold the same as his tenants until further orders."

There was testimony showing that, between the time of the issue of the special and general letters of administration, and without plaintiff's knowledge or consent, Gottschalk went on the premises, and arranged with Turner and wife, by written lease, that they would hold and occupy the premises as his tenants. He subsequently placed another tenant on the premises with Turner and wife; and they not agreeing, Turner and wife removed from the premises,

leaving their co-tenant in possession. Subsequently, Gotts-chalk placed Rogers in possession as his tenant. He, Rogers, was in possession when this suit was brought, and he is made a defendant with Gottschalk.

There was testimony tending to show that Gottschalk's claim of title was as follows : The lands had been sold for taxes assessed against Holloway, Gottschalk became the purchaser, and he had received a tax-deed. There was also testimony tending to show that this purchase was made at the instance, and as the friend of Holloway; that Holloway had, all the while, claimed and occupied the land as his own, and had regularly given in, and paid the taxes upon it since the sale. The court gave the jury the general charge, to find for the defendants, if they believed the testimony.

Letters of administration conferring general authority can not be granted "until the expiration of fifteen days after the death of the intestate is known."—Code of 1886, § 2019. Special administration may be granted at any time after in-testate's death.—*Ib.* § 2020. The powers of such special administrator are defined in the statute, and taking control of the real estate is not mentioned as one of them. The functions and powers of the special administrator cease when general administration is granted.—Code, §§ 2021–23. Special administration sometimes endures for a considerable time, and it may be that it is the duty of such special ap-pointee to look after the real estate, and see that it is not subjected to spoliation or waste. This, under our statutory system, which commits the custody and control of the realty to the personal representative at his option, and makes it assets for the payment of debts. For reasons to be stated further on, we consider it unnecessary to decide this question.

The fact, if it be such, that Gottschalk had acquired a title to the property by purchase at tax-sale, could exert no influence whatever in the trial of this case. "The estate or merits of the title can not be inquired into."—Code of 1886, § 3389. Prior lawful possession, and its forceful disturb-ance, or unlawful, subsequent interference with it, are the fundamental issues of fact, on which the fate of such con-troversy must mainly depend.— *Welden v. Schlosser*, 74 Ala. 355; 3 Brick. Dig. 505, §§ 5, 8; 2 *Ib.* 9, § 35. Gottschalk and his tenant, Rogers, must be treated in this case as if they and each of them were without title.

Under our system, a personal representative may sue and recover real estate on the title of him of whose estate he is

[Espalla v. Gottschalk.]

the legal representative. And prior actual possession, until overcome by opposing proof, will maintain an action to regain the property, against any one subsequently found in possession.—3 Brick. Dig. 325, § 47. "The personal representative has the right and capacity to maintain all suits necessary to recover possession of the land."—*Ib.* 465, § 157.

It is settled by decisions of this court too numerous to be cited, that to maintain the statutory proceeding resorted to in this case, the plaintiff must have had the actual possession, and the defendant must have unlawfully ousted him, or unlawfully held over, after the expiration of a temporary authority to occupy. Constructive possession is not enough. 3 Brick. Digest, 505, § 3. Does plaintiff's testimony make a case within this rule?

There is no question that when Holloway, plaintiff's intestate, died, he was, and for years had been, in possession of the premises sued for, claiming title. Turner was there by his permission, a tenant by sufferance, holding in the right of, and under Holloway. He was precluded by the very nature of his holding from setting up title adverse to Holloway; and if, while so holding, he had acquired a perfect title to the property from an outsider, he would have been estopped from setting it up, until he first surrendered back the possession to Holloway.—*Houston v. Farris*, 71 Ala. 570; *Norwood v. Kirby*, 70 Ala. 397. And he could not, by any act of his, clothe another with rights he could not himself have asserted. If, standing towards each other as the testimony shows Holloway and Turner did, Holloway had removed from the premises, leaving Turner in possession, and Turner had then attorned to Gottschalk, accepting a lease from him, Holloway could have maintained unlawful detainer against Turner or Gottschalk, or against any one else who came in pursuant to and in virtue of the said attempted attornment from Turner to Gottschalk.

It is necessarily true that death puts an end to all property-ownership which had been in the decedent. A dead man can not own property. It does not, however, abrogate the title. That continues, and passes at once to those on whom the law devolves it. It can not be in abeyance. True, in cases of intestacy, there is for a time no known personal representative to assert the title; but when one is appointed, his claim and right relate back to the moment of intestate's death. To the extent the law gives him title, or authorized control over decedent's estate, personal or real, to that extent the law dates that title and control back to the time when the intestate breathed his last. Not the authority to

sue, or otherwise assert the right, for that is conferred by his appointment. It is the right which relates back, not the remedy for its enforcement. And that right exists as the intestate left it by his death.—3 Brick. Dig., 463, § 130; *Ib.* 464, § 139; 1 *Ib.* 932, § 262. Our statutes confer on the personal representative the authority to take possession of the realty, and to sue and recover it for the purposes of administration; and when he asserts the right, it intercepts the descent, and dominates the right of the heir at law to enter.—1 Brick. Dig., 937, §§ 331–2; 3 *Ib.* 645, § 152. The sum of our decisions is, that "the personal representative has the right and capacity to maintain all suits necessary to recover possession from the heirs or alienee of the heirs." 3 Brick. Dig. 465, § 157.

The doctrine of revivor applies to this form of action. *Ridgeway v. Waugh*, 51 Ala. 423.

To apply these principles to this case: When Espalla was appointed administrator, he succeeded at once to all the rights and remedies of his intestate, if he elected to assert them, and that right related back to the moment of Holloway's death. If the plaintiff, Espalla, entered upon the land, and let it to Turner, he did so as the administrator of Holloway, and in virtue of the authority his appointment conferred upon him. If that entry and letting were authorized by his appointment as special administrator, then he could have sued in his individual name, and could have counted on his personal possession. But the law did not require him to do so. He had the equal right to sue in his representative capacity, for his right was but the intestate's right and possession, to which he had succeeded.—*Sims v. Boynton*, 32 Ala. 353; *Spear v. Lomax*, 42 Ala. 576; *Nicrosi v. Phillippi*, 91 Ala. 299.

It is clearly shown that, if before Holloway's death he had been forcibly evicted, or his tenant had held over, he could have maintained forcible or unlawful detainer, and his tenant could not, by his attornment to another, confer a possession that could defeat that action. We hold that Espalla, by his appointment as administrator, is not to be regarded as in by constructive possession. He was thereby clothed with the possessory right and remedy of his intestate. The Circuit Court erred in the charge given.

Reversed and remanded.