MONTGOMERY WATER POWER CO. v. WILLIAM A. CHAPMAN & CO.

(Circuit Court of Appeals, Fifth Circuit. December 7, 1903.)

No. 1,235.

1. TRESPASS—PLEADING DEFENSES UNDER LAW OF ALABAMA.

Under the law of Alabama, as settled by decision in an action of trespass de bonis asportatis, unlike that of trover, a contract relied upon by defendant as giving him authority to take the property may be proved under the general issue of not guilty in mitigation of damages only, and, if relied on as a defense to the action, must be specially pleaded, such plea being in the nature of confession and avoidance; hence an error in sustaining a demurrer to a special plea setting up such defense is a substantial one prejudicial to defendant.

2. SAME—DEFENSES—CONSTRUCTION OF CONTRACT.

A contract for the construction of a dam and other works on a river gave the engineer in charge, if in his opinion the work was not proceeding rapidly enough to be completed within the time specified, after notice in writing to the contractor, the right "to take any measure he may think proper to complete the work within the specified time." It further provided that the money expended in carrying out such measures should be paid by the contractor, and by another provision authorized the engineer to employ other parties to complete the work. Held, that it conferred no power or authority on the engineer or employer to take possession of the buildings, tools, and materials of the contractor without its consent, for use in the completion of the work, and afforded no defense to the employer to an action of trespass for such taking.

3. SAME.

Where it is at least doubtful whether a contract conferred on one party the right to take possession of property of the other, he will not be sustained in so construing it, and in enforcing his construction by taking forcible possession of the property without legal process.

In Error to the Circuit Court of the United States for the Middle District of Alabama.

This action was brought in the circuit court of Elmore county, Ala., by William A. Chapman & Co., citizens of Rhode Island, against the Montgomery Water Power Company, a corporation chartered under the laws of New Jersey, to recover $150,000 damages. On the petition of the defendant corporation the case was removed to the circuit court of the United States for the Middle District of Alabama. The declaration contains two counts:

"(1) The plaintiffs claim of the defendant one hundred and fifty thousand dollars as damages, for this, to wit: That plaintiffs, being contractors, entered into a contract with defendant to do a large amount of masonry work for it on the Tallapoosa river, about three miles above Tallassee, Alabama, and under said contract it was necessary to erect upon said defendant's premises temporary houses and sheds to store tools and supplies and to house laborers, and to take upon said premises furniture, supplies, and tools and equipments of great value, and all this was done by plaintiffs under the license and permission of defendant, and said houses, furniture, supplies, and tools and equipments were on said premises of defendant on the 25th of April, 1902, and were of the value of, to wit, fifty thousand dollars; that the said defendant, under the pretense of inspecting said property and listing and valuing the same with the view of making some arrangement respecting the obtaining the use thereof, obtained access thereto, and thereupon forcibly, willfully, and maliciously took possession thereof and converted the same to their own use, to the damage of the plaintiffs one hundred and fifty thousand dollars, for which they sue.

"(2) Plaintiffs claim of the defendant one hundred and fifty thousand dollars damages for that heretofore, to wit, prior to the 1st day of December, 1901, the plaintiffs had been employed by the defendant, as contractors, to build a dam and other structures for defendant, and it became convenient and necessary for the plaintiffs to erect upon defendant's lands near to and connected with the work so to be done temporary houses for the use of their employés engaged in said work, and to place furniture, supplies, tools, machinery, and equipments necessary and proper to be used by the plaintiffs in the performance of said work and labor for defendant upon defendant's said property, and plaintiffs, under a license from the defendant, did erect said houses and place said other property upon defendant's said premises for the purposes aforesaid, which said property was worth a large sum, to wit, $50,000; said houses not being built into the ground nor other [wise] attached thereto, except by being set, in some instances, upon posts placed in the ground, and in other instances set upon blocks placed upon the top of the ground. And while the said property was in the possession of the plaintiffs, defendant, without plaintiffs' consent, maliciously, willfully, forcibly, and wrongfully took possession thereof, and converted the same to its own use, to plaintiffs' damage one hundred and fifty thousand dollars."

The defendants first pleaded: "(1) That it is not guilty of the matters and things alleged therein. (2) And defendant, for further answer to the said complaint, says that said houses and sheds were erected and said supplies and equipments were taken upon the premises of the defendant by the said plaintiffs for the completion by the plaintiffs of a certain contract entered into between the plaintiffs and the defendant on the 11th day of July, 1899, a true copy of which said contract and the 'general requirements' and Exhibit I, made a part thereof, is hereto attached and made a part of this plea, the same as if herein fully set forth, and that said property was used by plaintiffs for such purpose; and defendant avers that it was and is provided in said contract that if at any time in the opinion of the engineer the work is not progressing rapidly enough to be completed within the specified time, then the engineer shall have the power to notify the contractor in writing to provide such additional labor, material, or plant as the engineer may think necessary, and in case the contractor does not within three days, or such longer time as may be fixed in and by such notice, comply in all respects with the demand contained therein, then the engineer shall have the right to take any measure he may think proper to complete the work within the specified time, and all moneys expended by the company in carrying out said measures shall thereupon be paid by the contractor or may be deducted or retained out of any moneys due or to become due to the contractor, and, should these moneys be insufficient, the balance shall be recoverable in the usual way as a debt due by the contractor to the company; and defendant avers that before the completion of said contract by the plaintiffs, and before the taking of said property stated in said complaint, the plaintiffs were notified that in the opinion of the said engineer the said work under said contract was not proceeding rapidly enough, and plaintiffs were then notified to immediately

proceed with said work and do all other things necessary for the expeditious completion of said dam, a part of said work to be completed by plaintiffs according to their said contract; and defendant avers that said notice provided that, if said requirements were not complied with by the plaintiffs within ten days, the defendant would exercise its right under said contract; and defendant avers that plaintiffs did not comply with said requirements during said period; and defendant avers that thereafter the engineer of defendant took possession of said property and materials as a measure which the said engineer thought proper to complete said contract within the specified time; and defendant avers that at the time of said notice to plaintiffs, and at the time of the exercise of said right as aforesaid, the plaintiffs did not have any labor at work upon said contract; and defendant denies that they obtained possession of said property by said pretense, and further avers that the taking of said property was without any assault or breach of the peace, and was solely as a measure deemed by said engineer proper for the completion of said contract of plaintiffs, and that the same was used, and only used, by defendant in the completion of said contract by it under the direction of said engineer."

The third plea is similar to the second, except that it does not aver giving any notice to Chapman & Co. to complete the work, but avers, in lieu thereof, the following:

"And defendant avers that the plaintiffs had been using said property for the completion of said contract, and that, before the completion of said work under said contract by the plaintiffs, the said plaintiffs had practically ceased work under said contract, and notified the defendant that they would not go on with said work; and defendant avers that thereafter the engineer of defendant took possession of said property as a measure which said engineer thought proper to complete said work; and defendant denies that it obtained access to said property at the time of said taking by fraud, avers that the taking of said property was without any assault or breach of the peace; and the use thereof was solely as a measure deemed by the said engineer proper for the completion of said contract by the plaintiffs, and that the same was used, and only used, by the defendant in said work under the direction of said engineer."

The contract, which is made part of the special pleas, contains two provisions, which are as follows:

"Section 5. * * * If, at any time, in the opinion of the engineer, the work is not progressing rapidly enough to be completed within the specified time, then the engineer shall have the power to notify the contractor, in writing, to provide such additional labor, material or plant as the engineer may think necessary; and in case the contractor, does not, within three days or such longer time as may be fixed in and by such notice, comply in all respects with the demands contained therein, then the engineer shall have the right to take any measure he may think proper to complete the work within the specified time; and all moneys expended by the company in carrying out said measure shall thereupon be paid by the contractor, or may be deducted or retained out of any moneys due or to become due to the contractor; and should these moneys be insufficient, the balance shall be recoverable in the usual way as a debt due by the contractor to the company.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Section 49. If, in the opinion of the engineer, the work herein specified should not be progressing rapidly enough, or executed in strict accordance with the specifications and drawings of this contract, and if upon written notification to the contractor said contractor does not fully comply with all the specified requirements, the company shall have the right to employ other parties to finish the work, and the said contractor shall be liable for any and all damages arising from his said breach of contract."

The plaintiffs demurred to pleas 2 and 3, and alleged as grounds of demurrer: "(1) That the contract did not authorize the defendant to forcibly take possession of and use the property of plaintiffs as a measure which defendant's engineer had a right to take because he thought it proper to complete the contract within a specified time. (2) That the contract contained, besides the clause 5 set out in the pleas, clause 49 (which is set out); that the latter

is specially applicable to the work contracted to be done by plaintiffs from being in 'Exhibit I' to the contract, while clause 5, from being in the general requirements, is not specially applicable to the contract with plaintiffs, and said plea does not show that the notification given was under the provision set out in said plea."

The circuit court sustained the demurrers to pleas 2 and 3, and the case was tried on the first plea, "Not guilty." The plaintiff had a verdict and judgment for $110,696.65, but to avoid a new trial, on the requirement of the court, agreed to reduce the judgment to $53,000 and costs. The defendant corporation has brought the case here, and assigns that the trial court erred in sustaining the demurrers to the special pleas. For brevity the plaintiff in error will be called the "company" and the defendant in error the "contractors."

Edward A. Graham and Horace Stringfellow (Robert E. Steiner, on brief), for plaintiff in error.

Wm. A. Gunter and Gregory L. Smith, for defendant in error.

Before PARDEE, McCORMICK and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended by the contractors that the company was not injured by the ruling of the court in sustaining the demurrers to the special pleas, because under the plea of "Not guilty," on which the case was tried, the defense interposed by the special pleas could have been made, and that in the absence of a bill of exceptions it is presumed that it was made. In Alabama, in actions founded on tort, the plea of not guilty is, by statute, made the general issue, and "puts in issue all the material allegations of the complaint." Code 1896, § 3295. But in trespass de bonis asportatis a defense based on legal authority for the taking complained of, like other pleas in confession and avoidance, must be pleaded specially. This is equally true as to any contract which the defendant desires to set up as authorizing him to take the property. Under former decisions in Alabama, if such authority was not specially pleaded, it was not permitted to be proved under the general issue, even in mitigation of damages. Womack v. Bird, 51 Ala. 504, 63 Ala. 500. But according to more recent decisions, if a defendant acted under a supposed, though invalid, authority, this fact may be proved for the purpose of mitigating or preventing exemplary damages. Boggan v. Bennett, 102 Ala. 400, 14 South. 742; Stephenson v. Wright, 111 Ala. 579, 20 South. 622. In the action of trover a different rule prevails. In that action a valid authority for the appropriation of the property may be proved under the plea of not guilty and in bar of the action, for it is said that the conversion is the gist of the action in trover, and is ex vi termini a tortious act which cannot in law be justified or excused; and it is manifest that any plea alleging matter of justification or excuse is equivalent to the plea of not guilty, since it must involve a denial of the conversion. Barrett v. City of Mobile, 129 Ala. 179, 30 South. 36, 87 Am. St. Rep. 54. "A conversion," said Mr. Justice Sharpe, speaking for the Supreme Court of Alabama, "is necessarily wrongful and cannot be justified. Where the appropriation is rightful, there is no conversion; therefore, a plea showing that fact directly contravenes the complaint, and is not in confession and avoid-

ance or in justification." Id. A distinction between the form of action in trespass and trover is maintained in Alabama. The form prescribed by statute for trespass in taking goods is a brief statement that "the plaintiff claims of the defendant ———— dollars damages for wrongfully taking the following goods and chattels, the property of the plaintiff," describing them; and the form for the action for the conversion of chattels is a claim for "damages for the conversion by the defendant of the following chattels," describing them. Code 1896, p. 947.

The declaration in this case is composed of two special counts. They do not follow the code form for either trespass or conversion, but each count contains all of the averments (and more) that are required in the code form for both actions, for in the first count special facts are stated to show that the possession was obtained wrongfully, and it is alleged that the possession was taken "forcibly, willfully, and maliciously," and in the second count it is charged that the possession was taken "maliciously, willfully, forcibly, and wrongfully," and in each count it is averred that the company "converted the same [the property so taken] to its own use."

The distinction between trespass and conversion is this: that trespass is an unlawful taking—as, for example, the unlawful removal of the property—while conversion is an unlawful taking or keeping in the exercise, legally considered, of the right of ownership. A mere seizure or unlawful handling may amount to trespass, while conversion is usually characterized by a usurpation of ownership. Fouldes v. Willoughby, 8 M. & W. 540, 551; Bigelow on Torts (7th Ed.) 510.

If the declaration is in trover, the contract was admissible in evidence under the general issue and in bar of the action, if it authorized the company to take and appropriate the property. If the action is trespass, the contract, which the company exhibited with the special pleas as giving it authority to take and use the property, was admissible in evidence under the plea of not guilty, but for the purpose only of mitigating or preventing exemplary damages. Counsel on both sides, in the briefs filed here, treat the action as trespass. Conceding that their construction of the declaration is correct, the contract exhibited with the special pleas was not admissible in justification of the alleged trespass under the general issue, and it therefore becomes necessary to determine whether or not the special pleas were subject to the demurrers.

The contractors by their suit charge that the company unlawfully and forcibly took and converted certain chattels owned and possessed by them, the contractors. The company, by special plea, admit the taking and the using of the property, and produce a contract which it alleges, under the circumstances stated, authorized it to take and use the chattels. The contractors demur to the special pleas, averring that the contract did not confer authority to take the property.

The ultimate question therefore is, did the contract confer authority on the company to forcibly take possession of the property, and convert it to its own use in the construction of the works described in the contract? Such authority is not conferred specifically.

We do not find in the contract words to the effect that on default of the contractors the company was empowered or authorized to take possession of the property and to use the same in the construction of the works. All that relates to the subject has been given in the statement of the case. Section 49, in a named contingency, authorizes the company "to employ other parties to finish the work, and the said contractor shall be liable for any and all damages arising from his said breach of contract." This section, it is clear, is not a license to take and use the property. If authority exists at all, it must be found in the part of section 5 which we have quoted. That section, in certain contingencies, after giving a specified notice, conferred on the engineer of the company the power and right "to take any measure he may think proper to complete the work within the specified time." The contention is that this language conferred on the company the right and power to take the property from the possession of the contractors against their consent, and to use it on the works. Our attention is called to the fact that the contract contains no restrictions upon the power conferred. That there must be some restriction is obvious, because the language does not and could not confer authority to do unlawful acts, nor would it be claimed, we suppose, that the language, broad as it is, would authorize the company to seize property of the contractors entirely disconnected in location and use with the works, nor would it authorize the company to imprison the contractors and force them to labor. The language must be read in the light of controlling principles of law. We must also look to the context, the contract as a whole, and the circumstances surrounding the parties. Immediately following the words relied on as conferring the power, and without a period between them, is the paragraph: "And all moneys expended by the company in carrying out said measures shall thereupon be paid by the contractor, or may be deducted or retained out of any moneys due or to become due to the contractor; and should these moneys be insufficient, the balance shall be recoverable in the usual way as a debt due by the contractor to the company." This language and section 49, which conferred the right to employ "other parties" to finish the work, show that at least the engineer was empowered to take "any measure he may think proper [at the cost of the contractors] to complete the work within the specified time," in the use of money and in the securing of "other parties" to complete the works. Is it not probable that the parties did not look beyond the expenditure of money to secure supplies, material, implements, and labor and the making of other contracts, or at least that they did not have in view the seizure and conversion of the contractor's tools and materials? Usually, perhaps not always, when a party to a contract has in view the taking of the possession of personal property held and owned by another, the contract is made to clearly show the authority. Such words of authority are familiar, as found in mortgages, deeds of trust, and other contracts. One paragraph would have explicitly conferred the power. Should we, by construction, put it into the contract, or should we conclude that its absence shows that it was not within the intention of the parties?

As analogous to this case, our attention is called by the learned counsel for the company to decisions of the Supreme Court of Alabama on the right and power of a mortgagee to take possession of mortgaged chattels. It was once held in Alabama that a mortgagee of personal property had no right to take it out of the mortgagor's possession by force or threats or against his will, although the law day had passed and the mortgage contained an express power authorizing him to take possession on default being made in the payment of the secured debt. Thornton v. Cochran, 51 Ala. 415. Later, however, it was held that under such circumstances the mortgagee could take possession of the mortgaged property without process of law and without the consent of the mortgagor and against his will, if he takes it without violence or breach of the peace, and that such taking, being the exercise of a right, will not constitute him a trespasser. Street v. Sinclair, 71 Ala. 110. One of the three justices dissented from this decision, but it is the unquestioned law of the state, for later, and without dissent, the court held that after default the mortgagee could execute the power by entering upon the premises of the mortgagor and taking peaceable possession of the mortgaged property without the consent of the mortgagor, provided he thereby committed no breach of the peace. Burns v. Campbell, 71 Ala. 271, 287. In Alabama the mortgagee has the legal title, and can recover possession of the property in an action at law. After default, he is entitled to possession. The mortgages in each of the cases cited contained distinct language authorizing the mortgagee on the default to take possession of the property and to sell the same. But it will be seen from these cases that notwithstanding the power to take possession is so clearly expressed, and is coupled with the legal title, the court hesitated in holding that the mortgagee had this right, and limited its exercise to cases in which he could take possession peaceably and without violence or breach of the peace.

There is no language in the contract pleaded here that vests in the company the title to the property involved, nor is there any language which specifically authorizes the company to take possession of the property. In the absence of such language, and where there may be doubt as to the proper construction of the contract, it does not seem proper nor conducive to peace and orderly conduct to permit one of the parties to it to construe it and to enforce its own construction. Such a rule would naturally lead to disorder and violence. Where the contract clearly gives the right to take possession, the courts carefully guard and limit its exercise. The doctrine conferring such right should not be extended to contracts where the right to take possession is not clearly and expressly conferred. The law is reluctant to permit the exercise of arbitrary power. The courts themselves, with a presumption in favor of their impartiality, are forbidden to take property for litigants except by due process. Where a party to a contract claims the right under it to take for his own use the property owned by and in the possession of the other party to the contract, to justify the taking it should appear in clear and unmistakable terms that such right has been conferred on him. It ought not to require argument and construction to deduce the au-

thority. If such be required, the owner and holder of the property, if unwilling to surrender it, should have his day in court before he is deprived of possession and ownership.

The view we take of the case makes it unnecessary for us to comment on the two contentions of counsel for the contractors—one founded on the authority of Champlain Const. Co. v. O'Brien (C. C.) 104 Fed. 930, and the other on Walker v. London, etc., Ry., 1 C. P. Div. 518. The contract did not, in our opinion, justify the seizure and appropriation of the property without the consent of the owners. It may be, as is claimed, that its use in the way shown by the plea was to the pecuniary advantage of the contractors, in that it lessened the amount of damages they would otherwise have been liable for. If so, such facts could have been shown, not in complete justification of the trespass, but in mitigation of damages, under the plea of not guilty on which plea the case was tried. In the absence of exceptions on that point, we must presume that the company had on the trial the full benefit of the contract and all relevant facts in mitigation of damages.

The Circuit Court decided correctly in sustaining the demurrers to the special pleas. The judgment is affirmed.