**WADE v. RAY et al.**

No. 5885—Opinion Filed Feb. 6, 1917.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 447.)

(Syllabus.)

**Appeal and Error — Attachment — Election of Remedies — Wrongful Attachment— Conversion — Election — Mitigation of Damages.**

The right of a defendant in a prior action, whose property was wrongfully attached therein, as plaintiff in an action for damages for such wrong, to treat such attachment as a conversion of such property and recover the full value of the same, with interest thereon from the date of such attachment, is not absolute, but dependent upon his timely election to do so; and when he procures an order dissolving such attachment and for the return of the property to himself upon the expiration of a stay and supersedeas obtained in anticipation of an appeal therefrom by the plaintiff in the attachment, who is defendant in such subsequent action for damages, and when, immediately after procuring such order, he knowingly suffers such property to be taken on execution in such prior action to satisfy a judgment for debt obtained by the plaintiff in that action without in any manner exercising his right of election, or manifesting his purpose to do so, especially where the attachment is not "fraudulent, malicious, or oppressive," the defendant in such latter action is entitled to show, as against the plaintiff's assertion of such right therein and in mitigation of damages, the seizure and sale of such property on such execution and the application of the proceeds thereof on such judgment.

An instruction to the jury in such action for damages to the effect that the plaintiff is entitled to recover only such damages as were sustained by him by reason of such attachment and detention of such property thereunder until the same was taken on such execution is not error entitling the plaintiff, who recovered less than the full value of the property as his damages, to another trial.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by M. E. Wade against T. H. Ray, S. C. Clarkson, and A. L. Moore. Judgment for plaintiff, and he brings error. Affirmed.

A. N. Munden, Geo. Matlack, and S. A. Horton, for plaintiff in error.

West, Hull & Hagan, for defendants in error.

THACKER, J. The plaintiff in error, Wade, as plaintiff in the trial court, commenced this action on May 24, 1911, against the defendant in error Ray, as principal, and his codefendants in error, Clarkson and Moore, as his (Ray's) sureties, for damages resulting from his (Ray's) wrongful attachment of Wade's crop of cotton on October 28, 1910, under a writ issued on the 26th day of that month in an action by Ray against Wade for debt in which Ray, on November 12, 1910, recovered judgment against Wade to the amount of $203.85 and costs, but at the same time suffered an order of dissolution of the attachment on Wade's motion because of his (Ray's) failure to make proof of the ground alleged for the attachment, although this order of dissolution was stayed for 30 days by further order and by supersedeas bond in anticipation of an appeal that was never perfected by Ray so as to give this court jurisdiction. In this order of dissolution and stay, the journal entry of which was filed by Wade on November 15, 1910, there was a further order for the return of the property to Wade at the end of the stay and supersedeas. Immediately after the judgment for said sum of $203.85 and costs and the dissolution of the attachment, and before the attached property had been returned to Wade or the journal entry of said dissolution had been filed for record, Ray, in effect abandoning the attachment proceedings, procured the issuance of a writ of execution on his said judgment, and on November 14, 1910, caused the same to be levied on said crop of cotton, and thereafter, in due time and course of such proceedings, to be sold for $587.92, which amount was duly paid over to the clerk of the court for proper application in that action of Ray against Wade.

In the instant case of Wade against Ray, the plaintiff demanded, as against the defendant Ray, $1,643, plus $50, as a reasonable attorney's fee, and as against the defendants Clarkson and Moore, as Ray's sureties upon the statutory undertaking in the attachment case, $406 of the amount demanded of Ray; but upon a trial to a jury Wade recovered against Ray, Clarkson, and Moore a verdict and judgment for only $125, including a reasonable attorney's fee of not more than $50, under instructions, over his (Wade's) objection, to the effect that he was entitled to recover only the amount of damages sustained by him by reason of the seizure of said crop of cotton under the writ of attachment on October 28, 1910, and its detention thereunder until November 12, 1910, with a reasonable attorney's fee not to exceed $50 additional, and was not entitled to recover, as he (Wade) claimed and still claims, the full value of said property at the time it was seized, with legal interest thereon for its conversion, without any deduction therefrom; and the plaintiff, Wade, being dissatisfied with the said instruction and the amount of his recovery, brings the case here for review upon the proposition that when he was wrongfully deprived of his property on October 28, 1910, by the said attachment, his cause of action for conversion was complete, and he was then entitled to recover the full value of his property at that date, with legal interest thereon from the same time, so that the subsequent application of the property on execution to Ray's judgment against him could not in any manner affect the amount he was entitled to recover.

The plaintiff, Wade, does not allege nor adduce evidence to prove "oppression, fraud, or malice" (section 2619, Stat. 1890, the same being section 2851, Rev. Laws 1910) in the procurement of the issuance and execution of the writ of attachment, nor ask for exemplary damages, the right to which affords a considerable measure of protection against either "oppression, fraud, or malice" in attaching or holding property under attachment; and for aught that appears, Ray had done or suffered nothing which would have defeated his right to have caused the property to have been returned to Wade on November 14, 1910, in accord with the order of the court of November 12, 1910, which was procured by Wade, and thereupon immediately seized under the execution and sold and the proceeds thereof applied as was done, or, perhaps, if Wade's contention here was correct, which would now defeat Ray's right to equitable relief against his error of having credited his judgment with proceeds of property which had, in effect, become his own before it was taken on the execution.

It will be borne in mind throughout the reading of this opinion that the plaintiff, Wade, was not allowed to recover the full value of the property less any specific amount on account of the benefit he received by reason of the application of the same to satisfy the judgment for debt against him; but instead of allowing a mitigation by specific reduction from the value of the

property, plus interest thereon, a somewhat different measure of damages was instructed, that is, Wade was by the instruction in question allowed to recover all damages resulting from the taking and detention of the property under the attachment until the same was taken under the writ of execution, which instruction was comprehensive enough to include, besides all other losses, any loss in the quantity, quality, or value of the property caused by such attachment and detention during that period. It will also be borne in mind throughout this opinion that the plaintiff, Wade, not only did not elect to treat the attachment of his property as a conversion until long after the stay of the order of dissolution and the supersedeas had expired and the sale and application of the proceeds of the property on execution to Ray's judgment, this action for damages was commenced, but procured an order for its return to himself; and the property must be regarded as owned by Wade when it was seized and sold under the execution.

There are three errors assigned by the plaintiff, Wade, and in speaking of them it is stated in his brief:

"The question presented by these three assignments of error all involve the same principle, and therefore we will present them together. However, outside of some technical defects, this is the question involved: Could the defendant in error [Ray] attach this property and hold it under valid orders of the court, and obtain these orders, and then sell it under an execution and plead this proposition in bar in a suit on the attachment bond?"

The answer of the defendant Ray alleges the fact of the seizure and sale and the application of the proceeds of the property under the said execution without any attempt to limit the effect of such fact to that of a plea in bar; and it must be obvious that the defendant Ray was and is entitled to be regarded as making whatever defense these facts constitute. It follows from the foregoing that the question in the case here is as to the true measure of damages under the facts stated, and in view of section 6005, Rev. L. 1910, as to whether the instruction already stated probably prevented plaintiff from recovering the full measure to which he was entitled. Upon this question there are two lines of decisions running in opposite directions.

In the following cases it is held that a plaintiff in a wrongful attachment, without reference to the degree of the wrong, cannot relieve himself from full liability, as for its conversion, by any action of his own, without the assent of the party entitled to damages therefor, and that a subsequent appropriation of it under execution to the attaching creditor's judgment is not a defense either in bar or in mitigation of damages: Tiffany v. Lord, 65 N. Y. 310; Wehle v. Butler, 61 N. Y. 245; Lyon v. Yates, 52 Barb. (N. Y.) 237; Otis v. Jones, 21 Wend. (N. Y.) 394; Hammer v. Wilsey, 17 Wend. (N. Y.)91; Churchill v. Abraham, 22 Ill. 455. To the contrary are the following cases: Morrison v. Crawford, 7 Or. 472; Earl v. Spooner, 3 Denio (N. Y.) 246, overruled; Pierce v. Benjamin, 14 Pick. (Mass.) 361, 25 Am. Dec. 396; McFadden v. Whitney, 51 N. J. Law, 391, 18 Atl. 62; Baldwin v. Porter, 12 Conn. 473; Curtis v. Ward, 20 Conn. 204; Lazarus v. Ely, 45 Conn. 504; Howard v. Manderfield, 31 Minn. 337, 17 N. W. 946; Beyersdorf v. Sump, 39 Minn. 495, 41 N. W. 101, 12 Am. St. Rep. 678; Scanlan v. Guiling, 63 Ark. 540, 39 S. W. 713. In Beyersdorf v. Sump et al., 39 Minn. 495, 41 N. W. 101, 12 Am. St. Rep. 678, it is held:

"Where goods are wrongfully and fraudulently withheld from the owner, for the purpose of subjecting them to levy under process to be issued, the wrongdoer will not be permitted to show the application thereof in satisfaction of an execution issued upon a judgment against the owner. But where goods, though detained without lawful authority, are subject to levy, and are in good faith and without fraud or collusion subsequently levied on and sold under process against the owner, that fact may be shown in mitigation."

In Morrison v. Crawford, 7 Or. 472, it is held:

"Where goods are seized on a void attachment, and are afterwards seized by the same person on a valid attachment and sold in due process of law, and their proceeds applied in payment of the debt of the owner, such application can be shown in mitigation of damages in an action by the owner for the conversion of the goods."

In that case it was said, among other things, in the opinion:

"The theory contended for by the respondents is, that when Crawford first had the goods taken on the first void attachment, he converted them, and they became his. It is true that Morrison had the right then to commence an action for the goods and declare a conversion, or he had a right to follow the specific property and assert the ownership in himself; for one is not deprived of the ownership of his property by a trespass, and until Morrison did elect to consider this trespass a conversion, he was still the owner of the goods, and could

alone transfer the title. Morrison continued the owner as against Crawford until he elected to claim the conversion and the value of the goods and if the goods were then attached by a creditor of Morrison, other than the tort-feasor, they could be properly applied to the payment of such debt. The view of this case, claimed by the respondent, and fully sustained by the New York authorities cited—Lyon v. Yates, 52 Barb. [N. Y.] 237; [Otis v. Jones] 21 Wend. 396; [Kerr v. Mount], 28 N. Y. 659; [Wehle v. Butler], 61 Id. [N. Y.] 247—if correct, entirely deprives a party who sues out an attachment, which from some irregularity is dissolved, from ever availing himself of the property so attached, to satisfy his claim, however just that claim may be. He cannot return the property to his debtor for he is not obliged to receive it; and he cannot sell it in the market, for he does not own it, until the debtor elects to sue him for a conversion; and he has no other way left but to obtain his judgment against his debtor, and try to set it off against a judgment which his debtor shall obtain against him for a conversion of the property. In cases of this kind, where an attachment is sued out in good faith, and to secure a debt, the genuineness of which has afterwards been evidenced by a judgment in favor of the attaching creditor, we think the failure of the attachment, for some irregularity in the proceedings by which it was obtained, which is usually the fault· of attorneys rather than the creditor, should not subject such attaching creditor to any greater liability or forfeiture than the actual damages which the debtor has suffered. If the property so attached is afterwards taken on execution by such attaching creditor, and applied on the debt to secure which the irregular attachment was issued, and consequently used for the benefit of the debtor, we think it would be proper to plead such application in mitigation of damages to an action afterwards brought by the debtor for a conversion for taking the goods on the void attachment. Such is the rule in effect as declared in many of the states."

In Pierce v. Benjamin, supra, it is said:

"The general rule of damages in actions of trover is, unquestionably, the value of the property taken, at the time of its conversion. But there are exceptions and qualifications of this rule, as plain and well established as the rule itself. Wherever the property is returned, and received by the plaintiff, the rule does not apply. And when the property itself has been sold and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use, the reason of the rule ceases and justice forbids its application. In all such cases the facts may be shown in mitigation of damages."

It appears that, in this jurisdiction the right of action for wrongful attachment does not accrue until the attachment has been dissolved (Overton v. Sigmon Furniture Mfg. Co. et al., 50 Okla. 531, 151 Pac. 215, and cases there cited) and Beyersdorf v. Sump, supra, is not quoted with approval upon this question; and we desire to limit approval of each and all of the foregoing quotations to the question decided in the instant case.

As shown by the reasoning in Morrison v. Crawford, supra, the plaintiff, Wade, might have maintained an action in replevin for the possession of the property in question; and the defendant Ray could not have used or disposed of it as his own until after plaintiff commenced this action for damages to the amount of its value, or otherwise elected to declare and declared his purpose to treat the wrongful attachment as a conversion; and it thus appears to have been plaintiff's property and subject to the writ of execution against him when taken thereon. In 6 Corpus Juris, "attachment," § 1165, p. 494, it is said:

"An action for damages against one causing property to be taken under a void attachment has been held to be in substance an action for trespass de bonis asportatis. It has been held, however, that when the writ is merely irregular or voidable, an action (of trespass) on the case is the proper and the only remedy."

In Montgomery Water Power Co. v. William Chapman & Co., 126 Fed. 68, 61 C. C. A. 124 (citing Bigelow on Torts [7th Ed.] 510) it is said:

"The distinction between trespass and conversion is this: That trespass is an unlawful taking, as for example, the unlawful removal of the property, while conversion is an unlawful taking or keeping in the exercise, legally considered, of the right of ownership. A mere seizure or unlawful handling may amount to trespass, while conversion is usually characterized by a usurpation of ownership."

Also see May v. Georgor, 21 Misc. Rep. 622, 47 N. Y. Supp. 1057.

In Black's Law Dictionary, "conversion" at law is defined as follows:

"An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of this condition or the exclusion of the owner's rights."

A constructive conversion is, in that connection, defined by the same authority as follows:

"An implied or virtual conversion, which takes place where a person does such acts

in reference to the goods of another as amount in law to the appropriation of the property to himself. * * * "

And in 7 Mod. Am. L. 380, it is said, with reference to the tort or conversion:

"This tort may be briefly defined as the unauthorized dealing with a chattel in such a way as to involve an assertion of ownership."

Although it may be at any time after the seizure of the property under the writ of attachment, the plaintiff, Wade, might have elected to treat the wrongful attachment as a conversion, and have established his right to do so by any appropriate assertion of his intention, if he had not, in addition to procuring in the order of dissolution a provision for its return to himself, abstained from making such election until the property had been seized and sold and its proceeds applied as already stated under Ray's execution against him, it must be obvious that the seizure and detention of this property under the writ of attachment was not strictly a conversion for want of usurpation of ownership, but was more in the nature of a trespass de bonis asportatis, and the action therefore is, under the facts in this case, more in the nature of an action of such trespass if not on the case, and upon the statutory undertaking in part, than an action for conversion; and, under the facts in the case, the defendant Ray was entitled to allege and prove in mitigation of the amount of damages, or in mitigation of the measure thereof, that the property has been seized on Ray's execution against Wade and, in accord with the law in that regard, sold and the proceeds applied on the former's judgment against the latter, as this application affects the amount of damages actually suffered by Wade.

If at the time of the dissolution of the attachment Wade had desired to treat the seizure of the property as a conversion he should not have indicated the contrary by procuring an order for its return to himself; and although he no doubt would have had the right to change his mind and elect to treat it as a conversion at any time before its actual return to him in accord with the order therefor, this right is subject to his duty not to sit silently by and see it taken on execution as his own property by the attaching creditor, but to give expression to his election in some manner before it was sold and applied to the judgment against him.

In referring to the seizure and sale of the property under execution, and the application of its proceeds to Ray's judgment against Wade, it is stated in the brief for Wade:

"It is not out of place here to observe that the plaintiff in error, Wade, did not participate in these proceedings, but acted upon the theory that if Ray were given rope enough he would hang himself. And we are very much inclined to believe that he did so very nicely."

It thus appears that, until after the property was sold and its proceeds so applied, Wade not only did not elect, but both by his affirmative action and his subsequent negative attitude toward the disposition of the property gave Ray ample cause to believe that he would not elect to treat the wrongful attachment as a conversion. It may be, although we do not say, that in case of "fraud, malice, or oppression," in attaching property, a defendant in an action for the wrongful attachment is not entitled to have his subsequent application of the same to the satisfaction of his judgment against the plaintiff in the attachment case considered in mitigation of damages, but, even in such a case, there would appear to be an adequate remedy for the wrong in the power of the jury to award exemplary damages for such "fraud, malice, or oppression"; and it may be doubted if, when the plaintiff has not elected to treat such attachment as a conversion before such application or, at least, in reasonably due time under the facts, the whole case should not go to the jury under proper instructions, allowing such application to be considered in mitigation of damages and, on the other hand, allowing the plaintiff to recover such exemplary damages as the jury deems proper.

The judgment of the court below is affirmed.

KANE and HARDY, JJ., concur, and SHARP, C. J., and TURNER, J., concur in the conclusion reached.